# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANDRA AKER, on behalf of herself and the a class of similarly situated persons, and STATE OF ILLINOIS ex rel. SANDRA AKER<br><br>Plaintiffs,<br><br>v.<br><br>BUREAUS INVESTMENT GROUP PORTFOLIO NO. 15 LLC, RIEXINGER & ASSOCIATES LLC, and STEPHEN P. RIEXINGER.,<br><br>Defendants. | No. 12 C 03633<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

The Amended Class Action Complaint in this case alleges that defendant Bureaus Investment Group Porfolio No. 15 LLC ("Bureaus") violated the Illinois Collection Agency Act (ICAA) and the Illinois Consumer Fraud Act (ICFA) by acting as an unlicensed collection agency and misrepresenting its ability to collect a debt. The complaint further alleges that Bureaus, the law firm of Riexinger & Associates, and its principle, Stephen Riexinger, all violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., with respect to a dunning letter sent by Riexinger to plaintiff Sandra Aker seeking to collect a debt allegedly owned by Bureaus. The defendants move to dismiss all claims, and for the reasons set forth below, the motion is granted.

## FACTS

Sandra Aker received a letter dated March 22, 2012, on the letterhead of Riexinger & Associates, LLC, and signed by Stephen Riexinger. The letter states that Riexinger & Associates "is a law firm representing [Bureaus], the current creditor of the above-referenced account which

originated with Credit One Bank, N.A." The letter claimed that Aker owed $698 on a credit card account and goes on to state:

> [T]he above referenced matter has been placed with us for collection and such action as necessary to protect our client. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

The remainder of the letter is the required FDCPA consumer notice advising Aker of her right to request, in writing, verification of the original obligation. Below the signature, the following notice is printed in capital letters: "In regard to this communication, Riexinger & Associates, LLC, is acting a debt collector and this a communication from a debt collector as defined by U.S.C. 1692(A)(6) [sic]. This is an attempt to collect a debt and any information obtained will be used for that purpose."

On May 11, 2012, Aker filed the original complaint in this action. The complaint does not allege that Aker did not owe the debt, that she attempted to verify the debt, or that she paid the amount requested. Instead, Aker maintains that the collection letter was false and misleading because Bureaus was not a licensed collection agency in Illinois; all of her legal theories are founded on this central allegation.

## DISCUSSION

According to the Amended Complaint, the dunning letter that Aker received violates one or more provisions of the FDCPA, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including: "[t]he false representation of the character, amount or legal status of any debt," 15 U.S.C. § 1692(e)(2)(A); "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," *id*. § 1692(e)(5); and "[t]he use of any false representation or deceptive means to collect or

attempt to collect any debt or to obtain information concerning a consumer," *id*. § 1692(e)(10). On the assumption that the same letter was sent to many people, the claim purports to be brought on behalf of Akers and all other "individuals in Illinois who were sent a letter in the form represented by [Akers' letter] on behalf of [Bureaus]."

The second count of the complaint asserts that Bureaus (alone) acted as an unlicensed collection agency in violation of the ICAA, 225 ILCS 425/4, and seeks injunctive relief pursuant to 225 ILCS 425/14(a) on behalf of the "people of the State of Illinois" by Akers as relator. Count Three, also against Bureaus alone, alleges a violation of the ICFA, 815 ILCS 505/2, on behalf of Akers and a class of Illinois residents who received the same dunning letter on behalf of Bureaus. The complaint alleges that in the dunning notice, Bureaus unlawfully threatened to take action which it was not legally entitled to take and did not intend to take.

The defendants move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). They argue that the claims against Bureaus are all premised on the faulty contention that Bureaus is a "collection agency" rather than a debt purchaser or creditor. With regard specifically to the FDCPA claim, they also maintain that the collection notice does not threaten litigation or otherwise violate the statute. And finally, with regard to the ICFA claim, Bureaus also contends that Akers pleaded no facts that show any violation of the ICFA independent of the asserted ICAA violation, and that Aker alleges no actual damages, as required by the statute.

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The plaintiffs must plead sufficient factual content from which the Court can "draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations in the form of legal conclusions, as well as threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Adams*, 742 F.3d at 728.

It is particularly apt to point out in this case that factual, but not legal, allegations are taken as true for purposes of the motion to dismiss. *Id*. This means that Court does not put any stock in Aker's conclusory, unsupported statements that Bureaus "is a collection agency as defined in the ICAA" and "is a debt collector as defined in the FDCPA," among myriad other non-factual allegations set forth in the Amended Complaint. Compl., Dkt # 26 ¶¶ 9, 11.

### A. Bureaus is not a "collection agency."

Each of Aker's legal theories is founded, at least in part, on her contention that the statements in the collection notice that she received were false and misleading because Bureaus is not licensed to operate as a collection agency in Illinois and therefore cannot legally pursue any remedies against her. That premise, as it applies to each of the claims, fails.

#### 1. ICAA claim

Aker bases her argument on § 4 of the ICAA, which provides, in part:

> No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.

225 ILCS 425/4. According to the complaint, Bureaus violated § 4 "by collecting without a license." Compl., Dkt. # 26 ¶ 48; *see id* ¶¶ 24-27. Because Bureaus was not a licensed debt collector, Aker maintains that the defendants violated not only the ICAA,[1] but also the FDCPA and the ICFA because the representations in the collection letter about Bureaus' possible pursuit of remedies were false and misleading by virtue of their implied assertions that there were any remedies available to an unlicensed collection agency like Bureaus. Any lawsuit it filed would be a nullity and it could not lawfully take any measures (assuming the plaintiff's view of the law, for the time being).

Section 4 of the ICAA applies to a "collection agency" within the meaning of the statute. A "collection agency" under the ICAA is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." 225 ILCS 425/2.[2] Aker argues that debt buyers also must be licensed as collection agencies under the ICAA, based

---

[1] The defendants devote much space to arguing that there is no private right of action for damages under the ICAA, but the plaintiff disavows any such claim and clarifies that she is exclusively invoking the injunctive remedy set forth in 225 ILCS 425/14a, "on behalf of the people of Illinois," to halt Bureaus ongoing violation of the ICAA by collecting debts without a license. Mem., Dkt. # 34-1. But what the plaintiff does not address is the potential non-cognizability of the injunction action in federal court. As the defendants point out (Mem., Dkt. # at 11), 225 ILCS 425/14a authorizes "any person [to] maintain an action in the name of the People of the State of Illinois" and to "apply for injunctive relief *in any circuit court* to enjoin [an unlicensed collection agency] from engaging in [practice as a debt collection agency]" (emphasis added). The Illinois legislature authorized an action in state court. This raises the question of whether the plaintiff's § 4 claim is cognizable. The Court need not resolve that question, however, because whether or not the plaintiff could directly sue in federal court for injunctive relief under the ICAA, the ICAA's substantive provision prohibiting debt collection activities in Illinois by an entity not licensed as a collection agency is also the basis of both the FDCPA and ICFA claims against Bureaus. Therefore the Court cannot sidestep the core question whether Bureaus engaged in unlicensed debt collection (and therefore held itself out as entitled to remedies it could not in fact properly enforce).

[2] A "debt buyer," on the other hand—what Bureaus claims to be—"means a person or entity that is engaged in the business of purchasing delinquent or charged-off consumer loans or consumer credit accounts or other delinquent consumer debt for collection purposes, whether it collects the debt itself or hires a third-party for collection or an attorney-at-law for litigation in order to collect such debt." *Id.*

on her reading of 225 ILCS 425/3(d) ("Acts constituting a collection agency"), amended effective January 1, 2008, which provides in relevant part: "A person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it . . . [b]uys accounts, bills or other indebtedness *and* engages in collecting the same" (emphasis added).

Aker's invocation of § 3(d) raises the question of whether Bureaus—which indisputably "buys accounts, bills, or other indebtedness"—also did something that constitutes "engag[ing] in collecting." Aker apparently assumes that referring a debt to a third-party collection agency is itself "collecting,"[3] but that proposition is neither self-evident nor supported by precedent. Illinois requires licensing to ensure that the collecting activity itself is conducted only by "qualified entities" in accordance with the public policy of "protect[ing] consumers against debt collection abuse." *See I*CAA, 225 ILCS 425/1a. Regulating the debt buyer does not further this goal (unless, as § 3(d) suggests, the debt buyer itself engages in collection activities). Aker's view that all debt buyers are subject to regulation as collection agencies, moreover, could work substantial mischief in the market for bad debt by threatening the viability of an important source of financing. Commercial firms routinely liquidate bad debts by selling them; that market for bad debt would become more expensive (and therefore less available) if debt purchasers had to themselves be licensed as debt collectors and were themselves subject to liability for the actions of debt collectors. To the extent that a debt buyer is not engaged in collection activities, it is no different that the initial creditor in its relationship to the debtor;[4] yet, Aker does not dispute that creditors have no duty to register as debt collectors.

---

[3] Under the ICAA, "debt collection" is "any act or practice in connection with the collection of consumer debts." 225 ILCS 425/2.

[4] As Bureaus argues, the Illinois Department of Financial and Professional Regulation, to whom the Illinois legislature has delegated the task of regulating ICAA compliance, categorizes a debt buyer such as Bureaus that hires a collection agency to perform the collection, as a

6

Not surprisingly, then, Akers fails to identify a single case in which a debt buyer has been deemed to be a debt collector by virtue of hiring a licensed debt collection agency to assist with collecting a debt owed, and there is abundant authority pointing in the opposite direction. Our local courts have uniformly held that debt buyers do not need to register under the ICAA unless they are also engaged in directly collecting debts. *See, e.g., NCO Galvan v. NCO Financial Systems, Inc.,* No. 11 C 4651, 2013 WL 1628190, at *3 (N.D. Ill. 2013) (granting summary judgment for debt buyer where "Portfolio did not communicate with debtors directly but instead retained NCO Financial, a legally distinct entity that was registered as a collection agency, to collect the debts on its behalf"); *McLaughlin v. LVNV Funding, LLC*, 971 F.Supp.2d 796, 801 (N.D. Ill. 2013) (holding that the "and engages in collecting" part of the "collection agency" definition in 225 ILCS 423/3(d) is not met by simply hiring a third party to collect from the consumer); *Leeb v. Pendrick Capital Partners, LLC*, 891 F.Supp.2d 1002, 1004 (N.D. Ill. 2012) ("Under the ICAA, a debt buyer is not a collection agency unless it 'engages in collecting' the debts it has purchased. If a debt purchaser does not engage in collection activities, it is not considered a collection agency under the ICAA and does not need to be licensed by the state.").

Here, under the facts of the complaint, Bureaus did not engage in any activity vis a vis Aker; it did not communicate with her at all or have any "direct contact" (so far as the complaint alleges). *See McLaughlin*, 971 F. Supp. 2d at 801; *Leeb*, 891 F. Supp. 2d at 1005 (granting motion to dismiss ICAA claim where: "Pendrick did not sue plaintiff to collect on the debt. Pendrick did not even send the dunning letters to plaintiff. In fact, plaintiff does not allege that

---

"creditor"—not a "collection agency." 68 Ill. Admin. Code § 1210.10 ("'Creditor' means individual, sole proprietorship, partnership or corporation that engages or retains the [collection] agency to collect debts due the individual, sole proprietorship, partnership or corporation.").

7

Pendrick ever attempted to contact him in connection with the debt. Pendrick placed the debt with a licensed collection agency for collection.").

Without any direct contact with her as the consumer, or any acts that reasonably could be construed as engaging in debt collection, Aker has failed to allege any facts that plausibly support her legal conclusion that Bureaus is a "collection agency" under the ICAA. Absent such allegations, there is no basis for her claim that Bureaus was required to have a license. Therefore, Bureaus cannot be liable under the ICAA for failure to register. Nor can the failure to register provide a valid basis for relief against Bureaus under the other two legal theories that Aker asserts: violation of the FDCPA and violation of the ICFA.

2. *FDCPA claim*

Akers rightly asserts that "it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Lox*, 689 F.3d at 825. But in view of her failure to sufficiently plead facts to suggest that Bureaus was acting as a collection agency for purposes of the ICAA (and was therefore in need of a license), no statement by Riexinger about its ability to "take action" or pursue "additional remedies" on Bureau's behalf could plausibly be a violation of the FDCPA's prohibition on false or misleading representations.[5]

---

[5] Even if statements in a collection notice are objectively false, they are not actionable under the FDCPA unless they are material, that is, they have the ability to influence the consumer's decision. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). Aker has not suggested how the falsity of the statements was material; the statements certainly had no bearing on the amount owed. *See Lox*, 689 F.3d at 826; *Hahn,* 557 F.3d at 757 (7th Cir. 2009). The unspoken argument seems to be that Aker could have ignored the debt (legitimate or not) altogether had Reixinger "truthfully" (under plaintiff's theory) represented that Bureaus could not sue in its own name to collect the debt in Illinois. The Court doubts that this is the kind of "intelligent choice" the FDCPA is designed to facilitate. *See Hahn*, 557 F.3d at 757-58.

### 3. ICFA claim

Aker's ICFA claim fails for the same reason. Aker, on her own behalf and as representative of a purported class, alleges that Bureaus violated the Illinois Consumer Fraud Act's prohibition of unfair acts, 815 ILCS 505/2, "by threatening to take action which it was not legally entitled to take and did not intend to take."[6] Compl., Dkt. # 26 ¶ 52. In her response to the motion to dismiss, Aker makes clear that the "unfair" conduct consists of "represent[ing] that a consumer can be subjected to 'additional remedies' where doing so is prohibited by criminal law." Mem., Dkt. # 34-1 at 12. "Doing so"—suing on the debt or pursuing "other remedies"—is unlawful under Aker's theory because that conduct would violate the ICAA's licensing requirement. *See id.*; Compl., Dkt. # 26 ¶ 24. According to Aker, because these acts violate the ICAA, and because there are possible criminal penalties, the conduct violates Illinois public policy and therefore is subject to the ICFA.

In moving to dismiss, Bureaus contends, again, that under the facts of the complaint, it was not engaging in debt collection and was not required to have a license, and therefore, it could not have violated the ICFA based on the allegedly unfair practice of misrepresenting its ability to pursue remedies. Because the Court has already rejected Aker's theory that Bureaus was required to be licensed under the ICAA and therefore was engaging in unlicensed collection activities, the ICFA claim fails for the same reason as the other based on the same premise.

### B. No FDCPA violation based on alleged threat of litigation

The defendants also argue that even if Bureaus were required to be licensed in Illinois as a collection agency, Akers would still have no claim because the letter did not threaten litigation.

---

[6] Aker does not identify any portion of her complaint that alleges that Bureaus (as opposed to Riexinger) "threaten[ed]" any such action or "represented" that she could subject to additional remedies.

The plaintiffs contend that "the only reasonable reading of [the collection letter] is that it does threaten litigation."

Claims under the FDCPA must be evaluated under an objective, "unsophisticated consumer" standard. *Gruber v. Creditors' Protection Service, Inc.*, 742 F.3d 271, 273 (7th Cir. 2014); *Bartlett v. Heibl*, 128 F.3d, 497, 500 (7th Cir. 1997). This hypothetical individual may be "uninformed, naive, or trusting," but she possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence' and is capable of making basic logical deductions and inferences." *Gruber*, 742 F.3d at 273-74 (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). The unsophisticated consumer does not interpret collection letters "in a bizarre or idiosyncratic fashion" and would be confused or misled only if "a signification fraction" of the population would be, too. *Pettit*, 211 F.3d at 1060.

Generally, whether a collection notice is misleading is an issue of fact for a jury, but "a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (*Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)). Because there has been no opportunity for the presentment of extrinsic evidence of confusion, such as consumer surveys, the defendants' motion can be granted only if "the allegedly offensive language is plainly and clearly not misleading." *Cf. Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012).

Applying this standard, the unsophisticated consumer would not glean a threat of litigation from the collection notice that Aker received.[7] "For a collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998). The references to taking "such action as necessary to protect [Riexinger's] client" and to "consider[ing] additional remedies" at unspecified times do not constitute a threat of litigation. They are vague; read literally, there is no content to them other than a promise to continue collection efforts, which is expected and is not problematic unless presented in a way that obscures the statutory entitlement to validate the debt. *See Sims v. GC Servs. L.P.*, 445 F.3d 959, 965 (7th Cir. 2006). Even explicit statements about the right to take legal action are not considered threats of litigation, *see Zemeckis*, 679 F.3d at 636-37, and here there is no reference whatsoever to courts, lawsuits, judgments, pleadings, damages, attorneys' fees, or any trappings of litigation. And the fact that the letter was sent by a debt collector that is also a law firm does not tip the balance such that "remedies" refers to litigation. There is no reason to believe than an unsophisticated consumer would assume, contrary to the plain language of the notice, that Riexinger was doing something other than "ACTING AS A DEBT COLLECTOR" just because it is organized as a law firm. It was accurate for Riexinger to identify himself as an attorney acting as a debt collector, and the fact that he did so does not turn the otherwise benign language into a litigation threat. That is

---

[7] Of course, a threat of litigation in itself does not violate the FDCPA; it must be a threat of litigation in the absence of a right to take such action. 15 U.S.C. § 1692(e)(5). The Court has already concluded that Aker failed to allege any basis why Reixinger could not take further collection measures on Bureaus' behalf—Bureaus was not required to be licensed—but the Court addresses the argument because, even assuming for the sake of argument that Bureaus needed a license, the letter still contains no actionable threat of litigation upon which a violation of § 1692(e)(5) could be asserted.

especially so where the notice clearly states that no Reixinger attorney had even reviewed the "particular circumstances" of Aker's account; litigation was not foreordained.

The conclusion that the dunning notice did not contain threats of litigation applies to the Riexinger defendants[8]—who sent the notice. But there is a glaring question largely unaddressed by the parties: how is it that Bureaus could be liable for a dunning letter that it did not send? Liability under the FDCPA is for "any debt collector who fails to comply with any provision of this subchapter." 15 U.S.C. § 1692k. The alleged provision that was violated is § 1692e, which prohibits making false or misleading representations "in connection with the collection of any debt." Yet the complaint does not allege that Bureaus made any such statements; the FDCPA claim is based solely on the contents of the letter, and the letter was not a communication from Bureaus and contained no representations made by Bureaus. On its face, the letter is a collection notice from Riexinger to collect on a debt owned by someone else. The complaint does not allege any representation made to Aker *by Bureaus* that could possibly be covered by § 1692e. Thus, even if Bureaus itself were a "debt collector" under the FDCPA for some purposes (*see* 15 U.S.C. § 1692a(4)), it was not acting as one with respect to the letter at issue.[9] There is nothing the in FDCPA, so far as the plaintiffs have pointed out, that extends liability to the third party creditor on whose behalf the collection takes place. Thus, the complaint alleges no facts from which it could even be inferred that Bureaus was responsible for the dunning notice that

---

[8] As the complaint fails to allege any plausible violation of the FDCPA, the Court does not address the issue of Stephen Riexinger's personal liability; however, the Court's silence should not be construed as acceptance of the plaintiff's theory that such individual liability is possible under the FDCPA under the facts alleged in the complaint.

[9] Indeed, debt buyers can certainly be "debt collectors" for the purposes of the FDCPA when they collect on their own debts. *E.g., McKinney v. Cadleway Properties, Inc.*, 548 F,3d 496, 501 (7th Cir. 2008) (purchaser of delinquent debts was subject to FDCPA where it issued collection letter).

contained the allegedly unlawful statements. Accordingly, Aker fails to state a claim against Bureaus under the FDCPA for that additional reason.

C. **No violation of the ICFA by Bureaus**

Bureaus raises several reasons to dismiss the ICFA claim against it, in addition to the faulty premise that it was required to be licensed as a debt collector. "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta v. Jos. A. Bank Clothiers*, ---F.3d----, 2014 WL 3765935, at * (7th Cir. 2014) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). If the ICFA plaintiff is a private party, she must have suffered actual damage—an actual pecuniary loss—as a result of the violation. *Id.*; *see* 815 ILCS 505/10a.

A practice is deemed "unfair" for ICFA purposes based upon factors such as "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*,7 75 N.E. 2d 951, 961, 201 Ill. 2d 403, 417-18 (Ill. 2002). And when, as here, the ICFA claim is for "unfair conduct" rather than "fraud," the particularity requirement of Rule 9(b) does not apply. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669–70 (7th Cir. 2008). That means that regular federal pleading standards—not those of Illinois—apply. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("When a claim alleges an unfair practice, the relaxed pleading standards of Rule 8 do indeed govern.").

Even without a requirement to plead with particularity, however, Aker has once again failed to plead any facts that plausibly suggest liability for Bureaus based on alleged debt collection activities. For one, the core "unfair" conduct she alleges—threats to take action that could not legally be taken—is based on the rejected premise that Bureaus was required to be licensed under the ICAA in order to have a debt collector threaten further action on its behalf.

Moreover, again Aker fails to provide a factual basis for liability on the part of Bureaus. Nothing in the complaint so much as suggests the Bureaus itself committed the unfair practices upon which Aker bases her claim—"threatening" additional remedies and "representing" that such action could legally be taken. (The other defendants are not subject to the ICFA, which exempts attorneys.) Aker does not cite a single communication she had with Bureaus. Therefore, Aker has not provided any factual basis for holding Bureaus accountable for the statements she claims were unfair.

Another glaring defect in the ICFA claim is Aker's failure to plead any actual damage resulting from the allegedly unfair business practice. The complaint seeks "actual damages, including all sums collected from class members," *see* Compl., Dkt. # 26 ¶ 60(b)(2), but Aker herself does not allege that any sum was collected from her, let alone from any other purported class member, or that she otherwise suffered pecuniary loss caused by the collection notice (and she did not respond to Bureaus' argument on this point). Aker alleges only that the letter "caused her to be confused, harassed, annoyed, and distressed." *Id*. ¶ 23. These damages are not pecuniary in nature and therefore they cannot, on their own, support a claim under the ICFA. *See Morris v. Harvey Cycle & Camper*, 911 N.E.2d 1049, 1053, 392 Ill. App. 3d 399, 402 (Ill. App. Ct. 2009) ("The failure to allege specific, actual damages precludes a claim brought under the Consumer Fraud Act. . . . Here, plaintiff did not allege actual damages in the form of specific

economic injuries. She alleged only emotional damages. For this reason, the trial court correctly dismissed plaintiff's count I for relief under the Consumer Fraud Act.").

Because of these fundamental deficiencies, there is no need to wade into the parties' disputes over whether debt collection activities are subject to regulation under the ICFA and whether Aker was required to plead a "standalone" ICFA violation because the ICAA is not one of the enumerated statutes which automatically trigger the ICFA. On the facts alleged, taken as true, Akers does not state an ICFA claim against Bureau.

\* \* \*

Aker fails to allege facts that could plausibly lead to the liability of any defendant under the FDCPA, or of Bureaus under the ICAA or the ICFA. Therefore, the complaint is dismissed without prejudice. To the extent that Aker can attempt, in good faith, to cure the significant deficiencies in the Amended Complaint, she may file a final amended complaint within 30 days of this order. In the absence of a timely filed amended complaint, the case will be dismissed.

Date: September 29, 2014

John J. Tharp, Jr.
United States District Judge